**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS** <u>**PRODUCTS LIABILITY LITIGATION**</u> | **MDL NO.: 2873** <br> **2:18-mn-2873-RMG** |

| | |
|---|---|
| REBECCA ST. JOHN SHERMAN, Individually and as Representative of the Estate of JAMES PRESTON SHERMAN, deceased, | : <br> : <br> : <br> : |
|     Plaintiff, | : <br> : |
| v. | : COMPLAINT <br> : |
| THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); <br> AGC CHEMICALS AMERICAS, INC.; <br> ARCHROMA, U.S., INC.; <br> ARKEMA, INC.; <br> BASF CORPORATION, Individually and as Successor in Interest to Ciba, Inc.; <br> BUCKEYE FIRE EQUIPMENT COMPANY; <br> CARRIER GLOBAL CORPORATION; <br> CHEMDESIGN PRODUCTS, INC.; <br> CHEMGUARD, INC; <br> CHEMICALS, INC; <br> CHUBB FIRE, LTD.; <br> CLARIANT CORPORATION, Individually and as Successor in Interest to Sandoz Chemical Corporation; <br> CORTEVA, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise; <br> DEEPWATER CHEMICALS, INC.; <br> DUPONT DE NEMOURS, INC., Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise; <br> DYNAX CORPORATION; <br> E. I. DUPONT DE NEMOURS & COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise; <br> NATION FORD CHEMICAL COMPANY; <br> NATIONAL FOAM, INC.; <br> THE CHEMOURS COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise; | : Case No. <u>2:23-cv-05181-RMG</u> <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

THE CHEMOURS COMPANY FC, LLC,                                     :
Individually and as Successor in Interest to DuPont              :
Chemical Solutions Enterprise;                                    :
TYCO FIRE PRODUCTS, LP, Individually and as                      :
Successor in Interest to The Ansul Company;                      :
UNITED TECHNOLOGIES CORPORATION;                                  :
UTC FIRE & SECURITY AMERICA'S                                     :
CORPORATION; and                                                  :
DOE DEFENDANTS 1-20,                                              :
                                                                  :
_Defendants._                                                     :

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, REBECCA ST. JOHN SHERMAN ("Anticipated

Estate Representative" or "Plaintiff"), Individually, and as Anticipated Estate

Representative for the Estate of JAMES PRESTON SHERMAN ("Decedent") by and

through the undersigned counsel, hereby files this Original Complaint against: THE

3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company), AGC

CHEMICALS AMERICAS, INC., ARCHROMA U.S., INC., ARKEMA, INC., BASF

CORPORATION, Individually and as Successor in Interest to Ciba, Inc., BUCKEYE

FIRE    EQUIPMENT    COMPANY,    CARRIER    GLOBAL    CORPORATION,

CHEMDESIGN PRODUCTS, INC., CHEMGUARD, INC., CHEMICALS, INC.,

CHUBB FIRE, LTD., CLARIANT CORPORATION, Individually and as Successor in

Interest to Sandoz Chemical Corporation, CORTEVA, INC., Individually and as

Successor in Interest to DuPont Chemical Solutions Enterprise, DEEPWATER

CHEMICALS, INC., DUPONT DE NEMOURS, INC., Individually and as Successor

in Interest to DuPont Chemical Solutions Enterprise, DYNAX CORPORATION, E. I.

DUPONT DE NEMOURS & COMPANY, Individually and as Successor in Interest to

DuPont Chemical Solutions Enterprise, NATION FORD CHEMCIAL COMPANY, NATIONAL FOAM, INC., THE CHEMOURS COMPANY, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, THE CHEMOURS COMPANY FC, LLC, Individually and as Successor in Interest to DuPont Chemical Solutions Enterprise, TYCO FIRE PRODUCTS, LP, Individually and as Successor in Interest to The Ansul Company, UNITED TECHNOLOGIES CORPORATION, UTC FIRE & SECURITY AMERICA'S CORPORATION, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown (collectively "Defendants") and alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.     This is a civil action for compensatory and punitive damages, costs incurred and to be incurred by Plaintiff and Decedent, and any other damages that the Court or jury may deem appropriate for bodily injury arising from the intentional, malicious, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with Aqueous Film-Forming Foam ("AFFF") containing Perfluorooctanoic Acid ("PFOA") and Perfluorooctanesulfonic acid ("PFOS") of Plaintiff and/or Decedent. All Defendants engaged in the manufacturing of the fluorochemical products, AFFF and/or the precursors to PFOA and PFOS (collectively hereinafter "fluorochemical products" or "C8") to which Decedent was exposed through contaminated drinking water and direct exposure as a military firefighter.

2.     This action involves highly toxic chemicals which have earned the designation "the forever chemicals" because they do not breakdown and their

insidious nature allows them to travel through soil and into groundwater while maintaining their deadly nature for decades.

3. Decedent was exposed to Defendants' fluorochemical products by ingesting drinking water contaminated with Defendants' fluorochemical products while stationed at Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, and Nellis Air Force Base in Las Vegas, Nevada.

4. For decades, the Defendants manufactured and sold AFFF and PFAS for use in AFFF to the United States Department of Defense for use on ships and at military bases, including at Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, and Nellis Air Force Base in Las Vegas, Nevada.

5. Individuals serving in the military on said Duty Stations, and/or working as civilian employees, including Decedent, and those residing in the area of the Bases obtained, and/or continue to obtain their drinking water predominantly from groundwater pumped from either base wells, and municipal, or private wells.

6. Residents in the area of the bases, individuals working as civilian employees, and those serving in the military on said Duty Stations, including Decedent, have been drinking, and eating food prepared with water laced with dangerous chemicals, namely PFOS and PFOA.

7. As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of Toxic Surfactants in AFFF presented an unreasonable

risk to human health and the environment.

8.    Nonetheless, Defendants marketed, and sold their products with the full knowledge that large quantities of Toxic Surfactant-laden AFFF would be used in training exercises, and in emergency situations in such a manner that the dangerous chemicals would be introduced, in large quantities into the environment.

9.    Defendants manufactured AFFF, and/or PFAS for use in AFFF that contaminated and continues to contaminate the environment, yet no Defendant included user warnings to protect the environment or innocent bystanders.

10.    For years, Decedent was exposed to, and ingested PFOS, and PFOA at extremely high and dangerous levels.

11.    Decedent had no way to know that he was consuming water, and food contaminated with PFOS, and PFOA until the contamination was disclosed to Plaintiff by local, and/or state, and/or federal officials and/or news media outlets.

12.    Furthermore, Decedent was exposed to Defendants' fluorochemical products throughout his many years of service as a military firefighter for the Alabama Air National Guard from approximately November 1974 until approximately November 1980 while stationed at Brookley Air Force Base in Mobile, Alabama, Kessler Air Force Base in Gulfport, Mississippi from, Barstow Marine Corps Logistics Base in Barstow, California from, Nellis Air Force Base in Las Vegas, Nevada, and Lackland Air Force Base in San Antonio, Texas.

13.    As a result of his exposure to Defendants' fluorochemical products, Decedent was diagnosed with pancreatic and prostate cancer, and suffered severed

personal injuries, pain, emotional distress, and death.

14.     The injuries, pain, suffering, emotional distress, and death were caused by Defendants' fluorochemical products.

## APPLICABLE FACTS AND SCIENCE

15.     Aqueous Film Forming Foam ("AFFF") is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades, and continues to be used, by civilian and military firefighters to put out fires and in training and response exercises in preparation for fires.

16.     AFFF contains synthetic, toxic per- and polyfluoroalkyl substances collectively known as "PFAS."[1] PFAS bind to proteins in the blood of animals and humans exposed to such materials and not only remain and persist over long periods of time, but, due to their unique chemical structure, accumulate and build up in the blood/body of the exposed individuals with each additional exposure, no matter how small. PFAS can travel long distances, move through soil, seep into groundwater, or be carried through air.

17.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF with knowledge that it contained highly toxic

---

[1] PFAS" includes but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including but not limited to those that degrade to PFOA and/or PFOS, and including but not limited to C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252 -13- 6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS#62037-80-3/ammonium salt of C3 Dimer Acid/P-08-509/FRD902/GX903/GenX).

and long lasting PFASs, which would contaminate Decedent's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Decedent. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

18. As a result, Decedent was exposed to AFFF containing PFAS and suffered severe personal injuries as a result.

19. This action is brought by Plaintiff for injunctive, equitable, and declaratory relief for injuries arising from the intentional, knowing, reckless and/or negligent acts and/or omissions of Defendants in connection with contamination of the blood and/or body of the Decedent with PFAS through the design, marketing, development, manufacture, distribution, release, training, and sale of AFFF containing PFAS and/or underlying chemicals and/or products added to AFFF which contained PFAS.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the Defendants and has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interests and cost.

21. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

22.     Plaintiff is filing this Complaint as permitted by Case Management Order No. 3 ("CMO #3") issued by Judge Richard M. Gergel of this Court. Pursuant to CMO #3, Plaintiff designates the United States District Court for the Southern District of Alabama as the "home venue" where Plaintiff would have otherwise filed suit pursuant to 28 U.S.C. § 1391. But for CMO #3, venue is proper in the United States District Court for the Southern District of Alabama in that the events or omissions giving rise to the claim occurred in that district. Plaintiff respectfully requests that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the Southern District of Alabama.

23.     The United States District Court for the Southern District of Alabama has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the State of Alabama for active use by Decedent during the training activities and firefighting activities. Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Southern District of Alabama of does not offend traditional notions of fair play and substantial justice.

## **PARTIES**

A.     **PLAINTIFF/DECEDENT**

8

24.     Plaintiff, REBECCA ST. JOHN SHERMAN, is a citizen of the United States of America and a current resident of Lucedale, George County, Alabama.

25.     Decedent, JAMES PRESTON SHERMAN, was a citizen of the United States of America and was born on March 3, 1951. Decedent died on October 25, 2021 of complications of malignant poorly differentiated neuroendocrine tumors caused by his pancreatic and prostate cancers.

26.     Plaintiff and Decedent were married on August 1, 1969, and continued to be married until Decedents death on October 25, 2021.

27.     Plaintiff was provided Letters Administratix over the Estate of Decedent by the Chancery Court of State of Mississippi, Jackson County on September 15, 2023.

## B.     DEFENDANTS

28.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

29.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

30.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of

defendants, and did so while acting within the scope of their duties, employment or agency.

31.     At all times relevant to this litigation, upon information and belief, each of the defendants designed, developed, manufactured, marketed and/or sold the AFFF or fluorochemical products containing PFOA or PFOS used by firefighters throughout the country, including the State of Alabama.

32.     Each of the Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or designed and manufactured components of and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint in such a way as to result in the contamination of Decedent's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in Decedent's blood and/or body.

33.     Defendant, **THE 3M COMPANY** (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 3M Center, St. Paul, MN 55144. **Defendant may be served via Alternative Service as set forth in CMO #6**.

34.     Defendant, 3M COMPANY manufactured, distributed, and sold fluorochemical products and AFFF from the 1960s until 2002.

35.     Defendant, **AGC CHEMICALS AMERICAS INC**. ("AGC Americas") is a corporation organized and existing under the laws of Delaware, with its principal

place of business at 11175 Cicero Drive, Alpharetta, GA 30022. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

36.    AGC Americas operates throughout the United States, manufacturing glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates, including those used in AFFF products.

37.    Defendant **ARCHROMA U.S., INC.** ("Archroma"), is a corporation organized and existing under the laws of Delaware, having a principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

38.    Defendant, **ARKEMA, INC.** ("Arkema") is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA 19406. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

39.    Arkema develops specialty chemicals and fluoropolymers.

40.    Arkema is a successor in interest to Elf Atochem North America and Atofina Chemicals Inc., which manufactured fluorosurfactants containing PFOA that was used in AFFF.

41.    Defendant, **BASF CORPORATION** ("BASF") is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, NJ 07932. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

42.    On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America.

43.    On information and belief, BASF Corporation is the successor in interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty chemicals company, which manufactured fluorosurfactants containing PFOA used in AFFF.

44.    Defendant, **BUCKEYE FIRE EQUIPMENT COMPANY** ("Buckeye") is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, NC 28086. **Defendant may be served via Alternative Service as set forth in CMO #6.**

45.    Defendant, **CARRIER GLOBAL CORPORATION** ("Carrier"), is a corporation organized and existing under the laws of Delaware, with its principal place of business at 13995 Pasteur Blvd., Palm Beach Garden, FL 33418. **Defendant may be served via Alternative Service as set forth in CMO #6C.**

46.    Defendant, **CHEMDESIGN PRODUCTS, INC.** is a corporation organized and existing under the laws of Texas, with its principal place of business at 2 Stanton Street, Marinette, WI 54143. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

47.    Defendant, **CHEMGUARD, INC.** ("Chemguard") is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, WI 54143. **Defendant may be served via**

**Alternative Service as set forth in CMO #6**.

48.     Upon information and belief, Chemguard is a subsidiary of Johnson Controls International, PLC.

49.     Defendant, **CHEMICALS, INC.** ("Chemicals") is a corporation organized and existing under the laws of Texas, with its principal place of business at 12321 Hatcherville Road, Baytown, TX 77521. **Defendant may be served via Alternative Service as set forth in CMO #6D**.

50.     Defendant, **CHUBB FIRE, LTD.** ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134120. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

51.     Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to; Chubb Fire & Security, Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

52.     Defendant, **CLARIANT CORPORATION** ("Clariant") is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, NC 28205. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

53.     On information and belief, Clariant was formerly known as Sandoz Chemicals Corporation, and manufactured fluorointermediates used in AFFF

products.

54.    Defendant, **CORTEVA, INC.** ("Corteva") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Rd., Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

55.    Defendant, **DEEPWATER CHEMICALS, INC.** ("Deepwater") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 196122 E. County Road 40, Woodward, OK 73801. **Defendant may be served via Alternative Service as set forth in CMO #6B.**

56.    Defendant, **DUPONT DE NEMOURS INC.** (f/k/a DowDuPont, Inc.) ("Dupont de Nemours Inc.") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, DE 19805 and 2211 H.H. Dow Way, Midland, MI 48674. **Defendant may be served via Alternative Service as set forth in CMO #6A.**

57.    On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off Corteva, Inc.

58.    Prior to the separation, DowDuPont owned Corteva as a wholly-owned subsidiary formed in February 2018.

59.    On June 1, 2019, DowDuPont distributed a pro rata dividend of both issued and outstanding shares of Corteva common stock to DowDuPont shareholders.

60.    Corteva holds certain DowDuPont assets and liabilities including DowDuPont's agriculture and nutritional businesses.

61.     On June 1, 2019 DowDuPont, the surviving entity after the spin-off of Corteva and another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the spin-offs, as well as the balance of the financial assets and liabilities of E.I. DuPont not assumed by Corteva.

62.     Defendants E.I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

63.     Defendant, **DYNAX CORPORATION** ("Dynax") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 79 Westchester Avenue, Pound Ridge, NY 10576. **Defendant may be served via Alternative Service as set forth in CMO #6.**

64.     On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers used in firefighting foam agents.

65.     Defendant, **E. I. DUPONT DE NEMOURS & COMPANY** ("DuPont") is a corporation organized and existing under the laws of Delaware, with its principal place of business is 1007 Market Street, Wilmington, DE 19805. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

66.     DuPont is a successor in interest to DuPont Chemical Solutions Enterprise ("DuPont Chemical"), a Delaware corporation with a principal place of business located at 1007 Market Street Wilmington, DE 19898.

67.     DuPont Chemical was a member of the Telomer Research Program ("TRP"). As a member it was required to provide a list and volume of products it was selling in the United States on a yearly basis.

68.     In a letter addressed to the Office of Pollution Prevention and Toxics (OPPT) Document Control Office, dated May 14, 2003, and signed by Stephen H. Korzeniowski, DuPont provided its Telomer-based sales products in the United States for the year 2002.

69.     The letter, which was redacted and sent to the USEPA under its PFOA Stewardship Program, included AFFF sales volume, on an active ingredient pound basis, as well as its Chemical Abstracts Service (CAS) number and chemical name, and is included in the PFOA Stewardship Program Docket.

70.     Defendant, **NATION FORD CHEMICAL COMPANY** ("Nation Ford") is a corporation organized and existing under the laws of South Carolina, with its principal place of business at 2300 Bank Street, Fort Smith, SC 29715. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

71.     Defendant, **NATIONAL FOAM, INC.** ("National Foam") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 141 Junny Road, Angier, NC 27501. **Defendant may be served via Alternative Service as set forth in CMO #6F.**

72.     Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd.

73.     Defendant, **THE CHEMOURS COMPANY** ("Chemours") is a

corporation organized and existing under the laws of Delaware, with its principal place of business at 1007 Market Street, Wilmington, DE 19889. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

74.    In 2015, DuPont spun off its "performance chemicals" business to Chemours along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

75.    Defendant, **THE CHEMOURS COMPANY FC, LLC** ("Chemours FC"), a Successor in Interest to DuPont Chemical, is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1007 Market Street Wilmington, DE 19899. **Defendant may be served via Alternative Service as set forth in CMO #6E.**

76.    Defendant, **TYCO FIRE PRODUCTS L.P.**, Individually and as Successor in Interest to The Ansul Company ("Tyco") is a limited partnership organized under the laws of Delaware, with its principal place of business at 9 Roszel Road, Princeton, NJ 08540. **Defendant may be served via Alternative Service as set forth in CMO #6.**

77.    Upon information and belief, Tyco is a subsidiary of Johnson Controls International, PLC.

78.    Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

79.    Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF that contained PFOA and PFOA. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and sell AFFF that contained PFOA and PFOS.

80.    Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

81.    Defendant, **UNITED TECHNOLOGIES CORPORATION** ("United") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 10 Farm Springs Road, Farmington, CT 06032. **Defendant may be served via Alternative Service as set forth in CMO #6.**

82.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint.

83.    Defendant, **UTC FIRE & SECURITY AMERICAS CORPORATION, INC.** (f/k/a GE Interlogix, Inc.) ("UTC") is a corporation organized and existing under the laws of North Carolina, with its principal place of business at 3211 Progress Drive, Lincolnton, NC 28092. **Defendant may be served via Alternative Service**

**as set forth in CMO #6.**

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

**A.     THE FLUOROCHEMICALS: PFOA AND PFOS**

84.     Fluorochemical products are manufactured chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason these molecules are so persistent. Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

85.     Fluorochemical products are highly water soluble, which facilitates the ease at which they spread throughout the environment, contaminating soil, groundwater, and surface water. This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

86.     Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

87.     Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposure.

88.     Since fluorochemical products were first produced, information has

emerged showing negative health effects caused by exposure to fluorochemical products.

89.     According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

90.     The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

91.     The EPA has noted that drinking water can be an additional source of PFC's in a small percentage of communities where these chemicals have contaminated water supplies. "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield at which fluorochemical products were used for firefighting."

92.     The EPA has issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water. When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

**B.     AQUEOUS FILM-FORMING FOAM ("AFFF")**

93.     AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

94.     The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

95.     PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

96.     All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

97.     AFFF can be made without PFOA, PFOS, or their precursor chemicals, which do not release PFOA, PFOS, and/or their precursor chemicals into the environment or in humans.

98.     When used as the Defendants intended and directed, Defendants' AFFF releases PFOA, PFOS, and/or their precursor chemicals into the environment.

99.     Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

100.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to cause injury and damage to Decedent.

## C.     DEFENDANTS' KNOWLEDGE

101.    On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are

toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

102.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

103.    In 1980, 3M published data in peer- reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

104.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

105.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

106.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

107.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

108.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

109.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products.

110.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

111.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest

Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

112.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

113.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

114.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing fluorochemicals, and/or fluorochemical products for use in AFFF; (2) failed to issue instructions on how AFFF containing fluorochemical products should be used and disposed of; (3) failed to recall and/or warn the users of

fluorochemical products, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew foreseeable the identities of the purchasers and end users of the fluorochemical products, as well as the final fate of fluorochemical products in water and biota, including in humans.

**JAMES PRESTON SHERMAN'S EXPOSURE
TO PFOA AND/OR PFOS CHEMICALS**

**A.     EXPOSURE THROUGH CONTAMINATED WATER**

115.     Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOA or PFOS chemicals and/or their precursor chemicals to users in the vicinity of Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, and Nellis Air Force Base in Las Vegas, Nevada.

116.     The descriptive labels and material safety data sheets for Defendants' AFFF containing PFOA or PFOS and/or their precursor chemicals utilized by users in the vicinity of Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, and Nellis Air Force Base in Las Vegas, Nevada did not reasonably or adequately describe the AFFF's risks to human health.

117.     The Defendants knew or should have known of the hazards of AFFF containing PFOA or PFOS and/or their precursor chemicals when the products were

manufactured.

118.   From approximately November 1974 to approximately November 1980, Plaintiff was stationed at Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, and Nellis Air Force Base in Las Vegas, Nevada, throughout which time he ingested drinking water contaminated with Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals, causing PFOA and/or PFOS and/or their precursor chemicals to enter Decedent's body.

119.   At no point did Decedent or users of Defendants' AFFF products located in Gulfport, Mississippi, Barstow California, nor Las Vegas, Nevada receive any warning that Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

## B.   EXPOSURE WHILE WORKING AS A FIREFIGHTER

120.   Upon information and belief, the United States Department of Defense thru the United States Air Force, and Alabama Air National Guard have stored and used Defendants' AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises.

121.   For decades, AFFF containing PFAS have been used in firefighter training and response exercises at military bases, airports, and fire departments across the country, including at Brookley Air Force Base in Mobile, Alabama, Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, Nellis Air Force Base in Las Vegas, Nevada, and Lackland Air

Force Base in San Antonio, Texas. The AFFF containing PFAS, which were designed, manufactured, marketed, distributed and/or sold by Defendants, were expected to, and did, reach the United States Air Force and Alabama Air National Guard, without substantial change in the condition in which it was sold.

122.   Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF containing PFOA or PFOS chemicals and/or their precursor chemicals directly to and/or for use at Brookley Air Force Base in Mobile, Alabama, Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, Nellis Air Force Base in Las Vegas, Nevada, and Lackland Air Force Base in San Antonio, Texas.

123.   The descriptive labels and material safety data sheets for Defendants' AFFF containing PFOA or PFOS and/or their precursor chemicals utilized by firefighters at Brookley Air Force Base in Mobile, Alabama, Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, Nellis Air Force Base in Las Vegas, Nevada, and Lackland Air Force Base in San Antonio, Texas.

124.   The Defendants knew or should have known of the hazards of AFFF containing PFOA or PFOS and/or their precursor chemicals when the products were manufactured.

125.   From approximately November 1974 to approximately November 1980, Decedent trained and worked with Defendants' AFFF containing PFOA or PFOs chemicals and/or their precursor chemicals to prepare for potential fires that might

occur, and he also used Defendants' AFFF containing PFOA or PFOs chemicals and/or their precursor chemicals while actively responding to calls on active fires while working as a civilian Firefighter at Brookley Air Force Base in Mobile, Alabama, Kessler Air Force Base in Gulfport, Mississippi, Barstow Marine Corps Logistics Base in Barstow, California, Nellis Air Force Base in Las Vegas, Nevada, and Lackland Air Force Base in San Antonio, Texas.

126.   Throughout his years of service as a military firefighter with  the Alabama Air National Guard, Decedent was exposed to, inhaled and ingested Defendants' AFFF and fluorochemical products.

127.   During Decedent's exposure to Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals, Decedent ingested such products, and the PFOA and/or PFOS and/or their precursor chemicals entered Decedent's body.

128.   At no point during his trainings or service did Decedent receive any warning that Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

129.   On or about September 8, 2020, Decedent's doctors diagnosed Decedent with pancreatic cancer.

130.   On or about December 15, 2020, Decedent's doctors diagnosed Decedent with prostate cancer.

131.   Decedent suffered the effects of his illness proximately caused by exposure to Defendants' fluorochemical products.

132.   Decedent died on October 25, 2021 from complications of malignant poorly differentiated neuroendocrine tumors caused by his pancreatic and prostate cancers.

## CAUSES OF ACTION

### COUNT I.  NEGLIGENCE
(Against All Defendants and Does 1-20)

133.   Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

134.   As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, or handlers of fluorochemical products, Defendants owed a duty to Decedent and users of Defendants' AFFF and AFFF-related fluorochemical products to exercise reasonable care in the instructing, labeling, and warning of the handling, control, use and disposal of Defendants' fluorochemical products.

135.   Defendants also voluntarily assumed a duty towards Decedent by affirmatively representing to Decedent and users of Defendants' AFFF and AFFF-related fluorochemical products that Defendants' previously detailed acts and/or omissions were not causing any physical harm or other damage to him, and that Defendants' fluorochemical products were safe to use.

136.   Defendants' fluorochemical products are inherently dangerous substances and Defendants owed a duty of care towards the Decedent that was commensurate with the harmful nature of the fluorochemical products and the dangers involved with exposure to fluorochemical products.

137.   Defendants failed to correct, clarify, rescind, and/or qualify its

representations to Decedent that Defendants' acts and/or omissions were not causing any physical harm and/or damage to him, or that the fluorochemical products were safe to use.

138.   Despite knowing that their fluorochemical products are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants failed to use reasonable care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold fluorochemical products; (b) issued instructions on how fluorochemical products should be used and disposed of; (c) failed to recall and/or warn the users of fluorochemical products of the dangers to human health and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their fluorochemical products.

139.   But for Defendants' negligent acts and/or omissions, Decedent would not have been exposed to unhealthy levels of fluorochemicals.

140.   Defendants' failure to act with reasonable care to (1) design a product to perform safely; (2) failure to issue an adequate warning or instruction on the use of fluorochemical products warning and; (3) failure to issue a recall, were substantial factors in causing Decedent's harm.

141.   Defendants knew or reasonably should have known that users would not

realize the danger Defendant's fluorochemical products posed to human health.

142.   A reasonable manufacturer or distributor under the same or similar circumstances would have warned of the danger.

143.   Defendants' negligent acts and omissions directly and proximately caused Decedent's pancreatic and prostate cancer and continue to directly, and proximately cause damage to Decedent in the form of severe personal injuries, pain, suffering, and emotional distress.

144.   Decedent is reasonably certain to have future permanent and lasting detrimental health effects due to Decedent's present and past injuries directly and proximately caused by Defendants' negligent acts or omissions.

145.   It has been reasonably foreseeable to Defendants for at least several decades that Defendants' negligent acts and/or omissions would directly and proximately cause bodily injury and economic damage to Decedent including the injuries and damages that Decedent suffers from.

146.   Defendants were conscious of the dangers of fluorochemical products, and its negligent acts or omissions, and were conscious that bodily injury to Decedent would or was likely to result from the fluorochemical products and Defendants' negligent acts and/or omissions. Nevertheless, with reckless indifference to these consequences, and as previously detailed, Defendants consciously and intentionally acted negligently and/or omitted the duties Defendants knew it owed to Decedent, other exposed individuals, and the public at large, and Decedent was harmed as a result.

147.    The acts and omissions of Defendants were negligent, intentional, reckless, malicious, willful and/or wanton, and as a direct and proximate result Decedent and/or Plaintiff have suffered and will continue to suffer some or all of the following damages:

      a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.    Physical injury, both temporary and permanent;

      c.    Economic Damages;

      d.    Severe and significant emotional distress and mental pain and suffering;

      e.    Humiliation, embarrassment, and fear;

      f.    Loss of enjoyment of life;

      g.    Annoyance and inconvenience; and

      h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II.  NEGLIGENCE PER SE
(Against All Defendants and Does 1-20)

148.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

149. One or more federal statutes, including, but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, impose duties of care on Defendants with regard to Defendants' actions and/or omissions towards Decedent and/or Decedent's safety.

150. By Defendants' acts and/or omissions resulting in harm to Decedent, Defendants violated and/or continue to violate and/or breach one or more federal statutes and/or duties, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and 1342, and 42 U.S.C. §§ 6921-6939e, constituting negligence per se, including liability for all injuries to Decedent associated with the fluorochemical products.

151. Defendants' violation of law and breach of its statutory duties directly and proximately caused and continue to directly, and proximately cause damage to Decedent in the form of economic damage and bodily injury for which Defendants are liable.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III.  MANUFACTURING DEFECT
(Against All Defendants and Does 1-20)

152. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

153. At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

154. At all times pertinent to this Complaint, Defendants regularly participated in manufacturing and placing the fluorochemical products into the American stream of commerce.

155. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

156. Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

157. At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

158. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

159.    These alternative designs and/or formulations were available, practical, and technologically feasible.

160.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

161.    The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

162.    As a direct and proximate result of Defendants' defective design, Decedent, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

      a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.    Physical injury, both temporary and permanent;

      c.    Economic Damages;

      d.    Severe and significant emotional distress and mental pain and suffering;

      e.    Humiliation, embarrassment, and fear;

      f.    Loss of enjoyment of life;

      g.    Annoyance and inconvenience; and

      h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

163.   As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Decedent and/or Plaintiff.

164.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT IV.  DEFECTIVE DESIGN
(Against All Defendants and Does 1-20)

165.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

166.   At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

167.   At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

168.   As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, and/or market any product which is unreasonably

dangerous for its intended and foreseeable uses.

169.    Decedent used Defendants' fluorochemical products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

170.    Defendants' fluorochemical products used by Decedent did not perform as safely as an ordinary consumer would have expected the products to perform when used as Decedent did in an intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.

171.    Defendants' defective design of the fluorochemical products was far more dangerous than Decedent or an ordinary consumer would expect when used, as Decedent did, in an intended and reasonably foreseeable manner.

172.    Defendants' fluorochemical products failure to perform safely was a substantial factor in causing Decedent's harm.

173.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

174.    These alternative designs and/or formulations were available, practical, and technologically feasible.

175.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by Defendants' manufacture, marketing, and/or sale of fluorochemical products.

176.    The risks of fluorochemical products were not obvious to users of the AFFF, nor were they obvious to users in the vicinity of the AFFF use, including

Decedent, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Decedent could not have reasonably discovered the defects and risks associated with the use of fluorochemical products and could not protect themselves from exposure to Defendants' fluorochemical products.

177.    As a direct and proximate result of Defendants' defective design, Decedent and/or Plaintiff have suffered and will continue to suffer some or all of the following damages:

  a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

  b.    Physical injury, both temporary and permanent;

  c.    Economic Damages;

  d.    Severe and significant emotional distress and mental pain and suffering;

  e.    Humiliation, embarrassment, and fear;

  f.    Loss of enjoyment of life;

  g.    Annoyance and inconvenience; and

  h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

178.    As a result of Defendants' design and formulation of a defective product, Defendants are liable in damages to Plaintiff and/or Decedent.

179.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for

actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V.  FAILURE TO WARN
(Against All Defendants and Does 1-20)

180.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

181.    Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

182.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Decedent.

183.    Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

184.    Defendants failed to adequately warn Decedent of the potential risks of fluorochemical products.

185.    Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Decedent's health.

186.    Had Defendants provided adequate warnings, Decedent could have taken measures to avoid or lessen the exposure.

187.    The lack of sufficient warnings was a substantial factor in causing Decedent's harm. As Defendants' products were:

1.    Defective because they failed to contain adequate warnings;

2.    Defectively Designed because they are more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweigh their benefits; and

3.    Defectively Manufactured as they failed to comply with their own specifications.

188.    Defendants' failure to warn was a direct and proximate cause of Decedent's pancreatic and prostate cancers.

189.    Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

190.    As a direct and proximate result of Defendants' product defects (including an inadequate warning), Decedent and/or Plaintiff have suffered and will continue to suffer some or all of the following damages:

a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.    Physical injury, both temporary and permanent;

c.    Economic Damages;

d.    Severe and significant emotional distress and mental pain and suffering;

e.    Humiliation, embarrassment, and fear;

f.    Loss of enjoyment of life;

g.    Annoyance and inconvenience; and

h.    Other damages, which, under the law and circumstances,

Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

191.    As a result of Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are liable in damages to Plaintiff and/or Decedent.

192.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI.  STRICT LIABILITY (STATUTORY)
(Against All Defendants and Does 1-20)

193.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

194.    Decedent asserts any and all remedies available under statutory causes of action from Decedent's state for strict liability against each Defendant.

195.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

196.    AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

197.    As a direct and proximate result of the Defendants products' defects, the Decedent has been injured, sustained severe and permanent pain, suffering,

disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including, but not limited to medical expenses, lost income, and other damages.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII.  STRICT LIABILITY
(Against All Defendants and Does 1-20)

198.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

199.    The Plaintiffs brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

200.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Decedent.

201.    The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to the Decedents, thus violating Alabama State law and the Restatement of Torts.

202.    The Defendants failed to properly, and adequately warn, and instruct

the Decedent as to the proper safety and use of the Defendants product.

203.   The Defendants failed to properly, and adequately warn, and instruct Decedent regarding the inadequate research and testing of the product.

204.   The Defendants' products are inherently dangerous and defective, unfit, and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform up to the expectations.

205.   As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Decedent has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

206.   By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Decedent, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT VIII.  STRICT LIABILITY
### MANUFACTURING DEFECT
(Against All Defendants and Does 1-20)

207.   Plaintiff hereby incorporates by reference the allegations contained in

the preceding paragraphs of this Complaint as if restated in full therein.

208.   At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

209.   At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

210.   As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

211.   Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

212.   At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

213.   Defendants could have manufactured, marketed, and sold alternative

designs or formulations of products that did not contain harmful fluorochemicals.

214.   These alternative designs and/or formulations were available, practical, and technologically feasible.

215.   The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

216.   The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

217.   As a direct and proximate result of Defendants' defective design, Decedent, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

a.   Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.   Physical injury, both temporary and permanent;

c.   Economic Damages;

d.   Severe and significant emotional distress and mental pain and suffering;

e.   Humiliation, embarrassment, and fear;

f.   Loss of enjoyment of life;

g.   Annoyance and inconvenience; and

h.   Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and

costs associated with the prosecution of this action.

218.   As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Plaintiff and/or Decedent.

219.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX.  STRICT LIABILITY
## DESIGN DEFECT
(Against All Defendants and Does 1-20)

220.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

221.   At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, making, construction, assembly, rebuilding, sale, distribution, preparation, and labeling, of fluorochemical products.

222.   At all times pertinent to this Complaint, Defendants regularly participated in placing the fluorochemical products into the American stream of commerce.

223.   As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of fluorochemical products, Defendants owed a duty

to all persons whom Defendants' products might foreseeably harm, including Decedent, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

224. Defendants' fluorochemical products were defectively designed and manufactured when the products left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the fluorochemical products exceeded the alleged benefits associated with its design and formulation.

225. At all times relevant to this litigation, Defendants' fluorochemical products reached Defendants' intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

226. Defendants could have manufactured, marketed, and sold alternative designs or formulations of products that did not contain harmful fluorochemicals.

227. These alternative designs and/or formulations were available, practical, and technologically feasible.

228. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to human health that was caused by the Defendants' manufacture, marketing, and sale of fluorochemical products.

229. The fluorochemical products manufactured, sold, or distributed by the Defendants were defective in design because the foreseeable risk of harm posed by the fluorochemical products could have been reduced or eliminated by the adoption of a reasonable alternative design.

230.    As a direct and proximate result of Defendants' defective design, Decedent, other exposed individuals, and the public at large have suffered and will continue to suffer some or all of the following damages:

a.    Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b.    Physical injury, both temporary and permanent;

c.    Economic Damages;

d.    Severe and significant emotional distress and mental pain and suffering;

e.    Humiliation, embarrassment, and fear;

f.    Loss of enjoyment of life;

g.    Annoyance and inconvenience; and

h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

231.    As a result of Defendants' design and formulation of a product, Defendants are strictly liable in damages to Plaintiff and/or Decedent.

232.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Decedent.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT X.  STRICT LIABILITY
## FAILURE TO WARN

(Against All Defendants and Does 1-20)

233.  Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

234.  Defendants knew or should have known that exposure to fluorochemical products presented a substantial danger when used because it is hazardous to human health and the environment.

235.  Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling fluorochemical products would result in physical harm to Decedent.

236.  Ordinary consumers of Defendants' fluorochemical products would not have recognized the risks.

237.  Defendants failed to adequately warn Decedent of the potential risks of fluorochemical products.

238.  Adequate instructions and warnings on the fluorochemical products could have reduced or avoided these foreseeable risks of harm to Decedent's health.

239.  Had Defendants provided adequate warnings, Decedent could have taken measures to avoid or lessen the exposure.

240.  The lack of sufficient warnings was a substantial factor in causing Decedent's harm. As Defendants' products were:

    1.    Defective because they failed to contain adequate warnings;

    2.    Defectively Designed because they are more dangerous than would be contemplated by an ordinary user, and also because the risks of the products outweigh their benefits;

and

3. Defectively Manufactured as they failed to comply with their own specifications.

241. Defendants' failure to warn was a direct and proximate cause of Decedent's pancreatic and prostate cancer.

242. Defendants' failure to provide adequate and sufficient warnings for the fluorochemical products that they manufactured, marketed, and sold renders the fluorochemical products defective products.

243. As a direct and proximate result of Defendants' product defects (including an inadequate warning), Decedent and/or Plaintiff have suffered and will continue to suffer some or all of the following damages:

a. Medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

b. Physical injury, both temporary and permanent;

c. Economic Damages;

d. Severe and significant emotional distress and mental pain and suffering;

e. Humiliation, embarrassment, and fear;

f. Loss of enjoyment of life;

g. Annoyance and inconvenience; and

h. Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

244. As a result of Defendants' manufacture, sale, and/or distribution of a product, Defendants are strictly liable in damages to Plaintiff.

245.    Defendants' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiff and/or Decedent.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XI.  CONCEALMENT, MISREPRESENTATION, AND FRAUD
### (Against All Defendants and Does 1-20)

246.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

247.    Defendants knowingly, intentionally, maliciously, willfully, wantonly, recklessly and/or negligently failed and/or refused to advise Decedent of the dangers and/or health risks posed by Defendants' fluorochemical products.

248.    Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendants' fluorochemical products from Decedent who had a right to know of information which would have prevented Decedent from being exposed and/or continuing to be exposed to the fluorochemical products.

249.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' fluorochemical products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to fluorochemical products and physical injuries in humans and animals.

250.    In connection with the fluorochemical products, Defendants have had and continue to have a general duty of care to disclose to Decedent the actual and potential harm to their persons as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Decedent that Defendants had, and were continuingly, exposing Decedent to harmful levels of fluorochemicals.

251.    In addition to its general duty of care, Defendants also voluntarily assumed a duty to disclose to Decedent the actual and potential harm to his body as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Decedent that Defendants had exposed, and were continuingly exposing Decedent to harmful fluorochemical products, which duty was voluntarily assumed by affirmatively representing to Decedent that the Defendants and their fluorochemical exposure were harmless, when Defendants knew and/or reasonably should have known that the Defendants' fluorochemical products caused, and were continuing to cause, bodily injury.

252.    Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and Decedent.

253.    Despite Defendants' knowledge regarding fluorochemical exposure, and despite Defendants' duties to disclose to Decedent, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld,

misrepresented, and/or concealed information from Decedent regarding exposure to fluorochemical products.

254.    Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure from Decedent with the intention to mislead and/or defraud him into believing that their fluorochemical exposure was not harmful, and to mislead and/or defraud him into continuing to use the fluorochemical products.

255.    Defendants withheld, misrepresented, and/or concealed information regarding fluorochemical exposure that was a substantial factor in causing Decedent's harm.

256.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Decedent was exposed to Defendants' fluorochemical products and was injured.

257.    Defendants not only withheld, misrepresented, and/or concealed material information from Decedent but also committed fraud against Decedent by affirmatively representing to Decedent that their fluorochemical products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' fluorochemical products had caused, and were continuing to cause, bodily injury and/or risk of such bodily injury to Decedent.

258.    Defendants' representations to Decedent were knowingly, intentionally,

negligently, and/or recklessly false.

259. Defendants had, and continue to have, a duty of care to provide Decedent, with truthful representations regarding the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Decedent with truthful representations regarding Defendants' fluorochemical products and the actual and potential harm to his persons as a direct and proximate result of Defendants' acts and/or omissions.

260. Defendants' affirmative representations and/or omissions to Decedent were false and were material to Decedent in forming his belief that Defendants' fluorochemical products were safe, in causing him to continue to use the fluorochemical products, and in causing him to not seek treatment and/or ways to remedy his past and continuing exposure to fluorochemical products.

261. Defendants made the affirmative representations and/or omissions to Decedent with the intention that Decedent would be misled into relying on such affirmative representations and/or omissions.

262. Decedent relied on Defendants' affirmative representations and/or omissions in forming his belief that Defendants' fluorochemical products were safe in causing them to continue to use the fluorochemical products, and in not seeking treatment and/or ways to remedy his past and continuing exposure to Defendants' fluorochemical products.

263. Decedent was damaged and physically harmed as a direct and

proximate result of his justified reliance on Defendants' affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Decedent continued to use the fluorochemical products.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XII.  BREACH OF EXPRESS AND IMPLIED WARRANTIES
### (Against All Defendants and Does 1-20)

264.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

265.   At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

266.   At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

267.   The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Decedent.

268.   The Defendants, through description, affirmation of fact, and promise

expressly warranted, and made assurances as described herein to military bases, fire departments, and the public, including Decedent, that their AFFF products were safe, and reasonably fit for their intended purposes.

269.    The Defendants breached these express warranties because their AFFF products were unreasonably dangerous, and defective as described herein, and not as the Defendants had represented.

270.    The Decedent is within the class of foreseeable users and reasonably relied upon Defendants judgment, and the implied and/or express warranties in using the products.

271.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause severe injury, pain, and cancer.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XIII.  NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants and Does 1-20)

272.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

2:23-cv-05181-RMG     Date Filed 10/17/23     Entry Number 1     Page 57 of 73

273.   Defendants' acts and/or omissions were negligent, intentional, and/or reckless, including Defendants' continued pollution of the environment and resultant exposure of Decedent to harmful fluorochemical products, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to Decedent.

274.   Defendants' negligently, knowingly and/or intentionally withheld and concealed material information from and/or affirmatively misrepresented to Decedent that they were not exposed to harmful fluorochemical products and/or that the fluorochemical products were not causing or creating any risk of harm to them, despite knowing at the time these concealments and/or misrepresentations were made that the fluorochemical products were causing and would continue to cause harm and/or unacceptable risk of harm to persons, including Decedent.

275.   At the time of Defendants' negligent, knowing, and/or intentional acts and/or omissions, it was foreseeable to Defendants and Defendants were certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Decedent.

276.   Defendants' acts and/or omissions were extreme, outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

277.   By continuing to expose Decedent to harmful fluorochemical products, and continuing to misrepresent to Decedent that the fluorochemical products were not and would not cause them harm or risk of harm and/or continuing to withhold

and/or conceal from Decedent material information on such issues, despite knowing that the fluorochemical products were causing and would continue to cause harm and/or risk of harm, Defendants acted in an extreme, outrageous, and intolerable manner which offended any generally accepted standard of decency and morality.

278.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused physical harm, and continue to cause physical harm, to Decedent.

279.    Defendants' acts and/or omissions resulting in Defendants' concealment and/or misrepresentations, directly and proximately caused great emotional suffering, and continue to cause emotional suffering and distress, to Decedent.

280.    Defendants' extreme, outrageous, and intolerable actions were a substantial factor in causing Decedent to suffer severe physical, mental, and emotional distress.

281.    As a direct and proximate result of Defendants' extreme, outrageous, and intolerable actions, Decedent has and will continue to suffer severe physical, mental, and emotional distress.

282.    No reasonable person could be expected to endure the mental anguish caused by the knowledge that entities have negligently, knowingly, and/or intentionally exposed them to years of harmful contact with AFFF containing PFOA or PFOS and/or their precursor chemicals and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XIV.  PAST AND CONTINUING TRESSPASS, AND BATTERY
(Against All Defendants and Does 1-20)

283.   Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

284.   Defendants have known for several decades that their fluorochemical products are harmful and toxic to humans and animals, and once ingested, will remain in a person's body for a long time, including through binding to blood and/or tissues.

285.  Despite such knowledge, Defendants continued to use the fluorochemical products, which caused harmful physical contact with Decedent.

286.   Defendants' continued actions with knowledge that such actions will result in harmful physical contact with Decedent demonstrate intent and/or reckless indifference by Defendants without regard to the harm they have caused and will cause.

287.   Defendants' intentional acts and/or omissions have resulted in fluorochemicals, in the body of Decedent or otherwise unlawful and harmful invasion, contact, and/or presence of fluorochemicals in Decedent's body, which interferes with Decedent's rightful use and possession of Decedent's body.

288.   The fluorochemicals present in and/or on Decedent's body originating

from Defendants' fluorochemical products was at all relevant times hereto, and continues to be, the property of Defendants.

289. The invasion and presence of the fluorochemical products in and/or on Decedent's body was and continues to be unconsented and without permission or authority from Decedent or anyone who could grant such permission or authority.

290. Defendants' intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of fluorochemical products onto, and/or into Decedent's body were substantially certain to result from those acts and/or omissions.

291. Harmful contact with Decedent's body was the direct and/or indirect result of Defendant's intentional acts and/or omissions.

292. The presence and continuing presence of the fluorochemical products in and/or on Decedent's body is offensive, unreasonable, and/or harmful and constitutes a continuing and/or permanent trespass and battery.

293. Defendants' past and continuing trespass and battery upon Decedent's body directly and proximately caused and continues to directly, and proximately cause damage to Decedent in the form of bodily injury, for which Defendants are liable.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XV.  WANTONNESS
(Against All Defendants and Does 1-20)

294.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

295.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Decedent.

296.    Defendants breached the duty of care owed to the Decedent.

297.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Decedent.

298.    As a proximate and foreseeable consequent of the actions of Defendants, Decedent was exposed to unreasonably dangerous toxic PFAS containing AFFF, which caused Decedent's injury.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.


## COUNT XVI.  VIOLATION OF CONSUMER FRAUD STATUTES
### (Violation of Alabama Consumer Protection Act)
(Against All Defendants and Does 1-20)

299.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as if restated in full therein.

300.    Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of their Aqueous Film Forming Foam Products to Decedent.

301.    Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of Alabama Consumer Protection Act, Ala. Code §§ 8-19-1, *et seq.*

302.    Through its false, untrue, and misleading promotion of their Aqueous Film Forming Foam Products, Defendants induced Decedent to rely, agree to, use, purchase, and/or pay for the purchase of their Aqueous Film Forming Foam Products.

303.    Defendants misrepresented the alleged benefits and characteristics of their Aqueous Film Forming Foam Products; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of their Aqueous Film Forming Foam Products; misrepresented the quality of their Aqueous Film Forming Foam Products as compared to alternatives; misrepresented and advertised that their Aqueous Film Forming Foam Products were of a particular standard, quality, or grade that their Aqueous Film Forming Foam Products were not; misrepresented their Aqueous Film Forming Foam Products in such a manner that later, on disclosure of the true facts, there was a likelihood that Decedent would have opted for an alternatives different course of action.

304.    Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct misled, deceived, and damaged Decedent, and Defendants' fraudulent, misleading, and deceptive conduct was

perpetrated with an intent that Decedent rely on said conduct by agreeing to, use, purchasing, and/or paying for purchases of their Aqueous Film Forming Foam Products. Moreover, Defendants knowingly took advantage of Decedent, who was reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Defendants' their Aqueous Film Forming Foam Products.

305.    Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Decedent and offends the public conscience.

306.    Decedent relied on, agreed to, and/or purchased Defendants' Aqueous Film Forming Foam Products primarily for personal, professional, family, or household purposes.

307.    As a result of Defendants' violative conduct, Decedent relied upon, used, agreed to purchase, and/or paid for purchases of Defendants' Aqueous Film Forming Foam Products that were not made for resale.

308.    Decedent was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at consumers was to create demand for and sell Defendants' Aqueous Film Forming Foam Products. Each aspect of Defendants' conduct combined to artificially create sales of the Defendants' Aqueous Film Forming Foam Products.

309.    Defendants has a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, labeling, development, manufacture, promotion, and sale of Defendants' Aqueous Film Forming Foam Products.

310.    Had Defendants not engaged in the deceptive conduct described above, Decedent would not have, used, purchased, and/or paid for the products and would not have incurred related medical costs.

311.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to consumers, including Decedent, constituted unfair and deceptive acts and trade practices in violation of consumer protection laws.

312.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices in violation of the consumer deceptive trade practices laws.

313.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the consumer deceptive trade practices laws.

314.    Under Ala. Code §§ 8-19-1, *et seq*., suppliers, manufacturers, advertisers, and/or sellers are subject to liability under such legislation for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

315.    Defendants violated consumer protection laws enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that Defendant's Aqueous Film Forming Foam Products were fit to be used for the purpose for which they were intended, when in fact they were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

316.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts. Ala. Code §§ 8-19-1, *et seq*. was enacted to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.

317.    Defendants had actual knowledge of the defective and dangerous condition of Defendants' Aqueous Film Forming Foam Products and failed to take any action to cure such defective and dangerous conditions.

318.    Decedent relied upon Defendants' misrepresentations and omissions in determining to use Defendants' Aqueous Film Forming Foam Products.

319.    Defendants' deceptive, unconscionable, and/or fraudulent representations, and material omissions made to Decedent, and various fire departments around the United States, constituted unfair and deceptive acts and practices.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XVII.  LOSS OF CONSORTIUM
(Against All Defendants and Does 1-20)

320.    Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

321.    Plaintiff was married to Decedent since August 1, 1969 until his death

on October 25, 2021 from complications of malignant poorly differentiated neuroendocrine tumors caused by his pancreatic and prostate cancers.

322.    As a direct and proximate result of the conduct of Defendants as outlined above, Plaintiff has necessarily paid and/or has become liable to pay, and will continue to pay and/or continue to be liable to pay, for medical aid, medical treatment, and medications of Decedent.

323.    As a direct and proximate result of the conduct of Defendants as outlined above, Plaintiff has been caused and will continue to be caused the loss of her husband's consortium, companionship, services, society, love, comforts, and their martial association has been altered, and; accordingly, Plaintiff has been caused great mental anguish and emotional distress.

324.    Defendants' conduct, as described above, was willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their patients, and warrants an award of punitive damages.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XVIII.  EXAMPLARY OR PUNITIVE DAMAGES
(Against All Defendants and Does 1-20)

325.    Plaintiff hereby incorporates by reference all allegations contained in

the preceding paragraphs of this Complaint as if restated in full therein.

326.   At all times relevant to the present cause of action, Defendants manufactured, marketed, and sold the fluorochemical products that were used by Decedent and that resulted in the physical bodily injuries that Decedent has suffered and will continue to suffer.

327.   At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that their fluorochemical products were toxic chemicals capable of causing harm to human health.

328.   Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Decedent to be exposed to fluorochemical products.

329.   The willful, wanton, malicious, fraudulent and/or reckless conduct of Defendants, includes, but is not limited to:

> a.   issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including, but not limited to PFOA and PFOS;
>
> b.   failing to take all reasonable measures to ensure fluorochemical products would be used effectively and properly disposed of;
>
> c.   failing to prevent the foreseeable impacts of fluorochemical exposure upon the Decedent; and
>
> d.   withholding, misrepresenting, and/or concealing information regarding the releases of fluorochemical products and exposure from Decedent, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their

exposure to fluorochemical products was not harmful, and to mislead and/or defraud them into continuing to purchase and consume drinking water contaminated with fluorochemical products.

330.    As a result of Defendants' conduct, Decedent has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' fluorochemical products and will continue to suffer serious, debilitating, and severe physical, mental, and emotional distress of his pancreatic and prostate cancer caused by Defendants' fluorochemical products.

331.    Defendants have demonstrated an outrageous conscious disregard for the physical safety of Decedent and acted with implied malice, warranting the imposition of punitive damages.

332.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Decedent punitive damages in an amount sufficient to deter and punish such conduct.

WHEREFORE, the Plaintiff prays for judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## TOLLING OF THE STATUTE OF LIMIATIONS

### A.    DISCOVERY RULE TOLLING

333.    Plaintiff and/or Decedent had no way of knowing about the risk of severe injury associated with the use of and exposure to AFFF until very recently.

334.   Within the time period of any applicable statute of limitations, Plaintiff and/or Decedent could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health.

335.   Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF could cause personal injury.

336.   For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## B.     FRAUDULENT CONCEALMENT TOLLING

337.   All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

338.   Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

339.   This fraudulent concealment continues through present day.

340.   Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## C.     ESTOPPEL

341.   Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Decedent, to accurately provide safety information concerning its products and the risk associated

with the use of and exposure to AFFF.

342. Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

343. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## DAMAGES

344. Plaintiff hereby incorporates by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

345. As a direct and proximate result of Defendants' tortious conduct and breach of duties as set forth herein, Decedent, JAMES PRESTON SHERMAN had sustained serious injuries after developing pancreatic and prostate cancers.

346. The serious injuries sustained by Decedent, JAMES PRESTON SHERMAN were painful, permanent, and disabling, and have necessitated extensive medical care, and treatment in the past.

347. As a direct and proximate result of the described injuries above, Decedent, JAMES PRESTON SHERMAN had sustained pain and suffering, both physical and mental prior to his death.

348. As a further direct and proximate result of the described injuries above, Decedent, JAMES PRESTON SHERMAN had sustained disability, and loss of enjoyment of life prior to his death.

349. As a further direct and proximate result of the described injuries above,

Decedent, JAMES PRESTON SHERMAN had sustained medical expenses, out of pocket expenses, and costs prior to his death.

350.    As a further direct and proximate result of the described injuries above to Decedent, Plaintiff, REBECCA ST. JOHN SHERMAN has and continues to sustain medical expenses, out of pocket expenses, and costs prior to the death of her husband.

351.    As a direct and proximate result of Defendants' tortious conduct and breach of duties as set forth herein, Plaintiff, REBECCA ST. JOHN SHERMAN has sustained and will continue to sustain loss of consortium of her husband.

WHEREFORE, Plaintiff, by and through undersigned counsel, demands judgments against Defendants for all applicable damages, costs of this action, post-judgment interest, and trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgments against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

I.    For Decedent's actual damages according to proof, including Decedent's pain & suffering, Decedent's mental anguish and or distress as well as Decedent's medical, surgical, hospital bills, and the full value of Decedent's life;

II.    Physical impairment and incapacity suffered by Decedent

III.    For loss of care, comfort and society of the Decedent;

IV.    For pecuniary loss of the beneficiaries/heirs including but not limited to funeral and burial costs, for mental shock and suffering of the

beneficiaries/heirs, for wounded feelings of the beneficiaries/heirs, for grief and sorrow of the beneficiaries/heirs, loss of companionship and deprivation of the use and comfort of the Decedent's experience, knowledge and judgment in managing the affairs of Plaintiff and Decedent's beneficiaries;

V.     Reasonable and necessary medical expenses for treatment received by Decedent.

VI.    Disfigurement suffered by Decedent.

VII.   Lost wages, loss of earnings, and/or lost earning capacity that Decedent incurred.

VIII.  For punitive damages according to proof;

IX.    Plaintiff is awarded full, fair, and complete recovery for all claims and causes of actions relevant to this action.

X.     For Plaintiff's cost of suit herein, fees, expenses and prejudgment and post-judgment interest as authorized by law on Plaintiff's behalf;

XI.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided by Alabama law.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to FED. R. CIV. P. 38(b), Plaintiff respectfully demands a jury trial on the issues triable by jury.

Dated: <u>October 17, 2023</u>          Respectfully submitted,

                                             **SIMON GREENSTONE PANATIER, P.C.**

                                             */s/ Shreedhar R. Patel*
                                             Shreedhar R. Patel
                                             TX Bar No. 24074864
                                             1201 Elm Street, Suite 3400
                                             Dallas, TX 75270
                                             Tel: (214) 276-7680
                                             Fax: (214) 276-7699
                                             Email: spatel@sgptrial.com

                                             ***Attorney for Plaintiff***